————o————

5319.

(Court of Appeal, Parish of Orleans.)

## COL. E. H. RUFFNER, U. S. A., RETIRED vs. CLARENCE S. HEBERT, ET ALS.

1. In a suit for damages occasioned by a wrongful act, prescription commences to run not from the time the act was done, but from the time when damage was sustained in consequence of it.

2. The facts of the case sustain the plea of prescription herein filed.

Appeal from the Civil District Court, Division "D."

John May, for plaintiff and appellant.

C. S. Hebert, M. C. Sharff, for defendant and appellee

DUFOUR, J.—The plaintiff, formerly United States

Engineer in charge of the local United States Engineer's office, sues the former local United States Sub-treasurer and two of his employees, for damages for having paid out of plaintiff's official account a check upon a forged endorsement.

The present appeal is from a judgment sustaining a plea of prescription of one year.

It is not denied that, in a suit for damages occasioned by a wrongful act, prescription commences to run not from the time the act was done, but from the time when damages was sustained in consequence of it.

The only question presented is; at what time, under the facts of this case, was the injury actually sustained?

Stating only the facts pertinent to the plea and apparently conceded by counsel, it appears that, when Congress makes an appropriation to be used by the local engineering bureau, the treasury department deposits in the local sub-treasury the amount appropriated to the official account of the disbursing officer. This account is subject to official checks by that officer who is responsible to the government for all moneys placed to his credit.

On August 18, 1909, Ruffner's chief clerk, McLeod, presented a fraudulent claim alleged to be due to one Swarbrick, for which Ruffner drew a check payable to Swarbrick; McLeod forged the latter's endorsement, O. K.'d it in his own name and collected it from the sub-treasury teller on August 20, 1908.

Upon checking against the fund on his retirement from office so as to turn over the balance to his credit to his successor, Ruffner, on September 14, 1908, was informed that his account had been charged with the amount of the Swarbrick check.

On September 16, 1909, the Auditor of the War Department to which Ruffner was official by subject, ruled

that he should return the amount to the treasury.

Various appeals were taken which, on December 14, 1909, culminated in a ruling of the Comptroller of the Treasury denying plaintiff credit for the disbursement. In so ruling, the department officer made the following statement:

> "The question whether Col. Ruffner or the Assistant Treasurer of New Orleans as between themselves must lose the money is one which this office has not jurisdiction to decide, such questions they must settle between themselves, or before the courts. This office will not undertake to decide anything beyond the question involved in the claim for credit for the unlawful disbursement."

After this ruling the plaintiff deposited the disputed sum in the U. S. Sub-treasury, and, on October 4, 1910, plaintiff instituted the present action.

His claim is that prescription did not begin to run until the final ruling of December 14, 1909, under which he made his payment to the treasury and that, until he had done so, no right of action accrued to him.

The defendant argues, on the other hand, that the loss occurred on August 20th, the day the check was cashed and that plaintiff's right of action accrued upon his being notified, on September 16, 1909, that the check had been charged to his account.

The settlement of the merits of the controversy would, therefore, exclusively hinge on the determination of one fact; to whose fault or negligence is the loss attributable?

This is a purely judicial question; it is, in no sense and in no respect, an administrative one of which the executive department of the government may properly take cognizance.

Doubtless, the War and the Treasury Department may, at the request of the parties in interest, decide **prima**

facie which of the two officials shall return the money to the treasury and how the entries in governmental book-keeping shall be made.

But the ultimate liability, as between the parties litigant, can be settled by the courts alone; hence, the rulings invoked can neither mark the beginning of prescription, nor operate to interrupt or suspend the current of prescription which has already began to run.

The loss was caused by the payment of the forged check which was charged against Ruffner's official account, from the very beginning it was evident that the liability must fall on one of the two officials.

No loss could befall the government, protected as it was by the presumably solvent official bonds of all the parties.

We see no reason why plaintiff could not have sued defendants to settle the question of liability inter sese from the very moment he obtained the knowledge that defendants had debited his official account with the amount of the fraudulent checks.

If such payment and debit were shown to be illegal and unwarranted, the defendants would have been liable without any previous payment by the plaintiff to the treasury.

The controversy could have been settled as effectually then as now. The unnecessary appeal of plaintiff to department officials and the subsequent return of the money to the treasury without suit cannot alter the situation.

Judgment affirmed.

May 1, 1911.

Rehearing refused, May 29, 1911.

Writ denied by Supreme Court, June 30, 1911.